—FOR PUBLICATION—

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

GERALDINE FLOURNOY,
        Plaintiff,

v.

GOVERNMENT NATIONAL MORTGAGE      Case No. 15-61985-CIV-GAYLES
ASSOSICATION, AS TRUSTEE;
NATIONWIDE ADVANTAGE MORTGAGE
COMPANY; MORTGAGE ELECTRONIC
SYSTEMS, INC. *et al.*,
        Defendants.
_____/

## ORDER

      **THIS CAUSE** comes before the Court on the Defendants Nationwide Advantage Mortgage Company ("Nationwide") and Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law [ECF No. 11]. In their motion, the Defendants argue, *inter alia*, that the Complaint should be dismissed because, under the *Rooker–Feldman* doctrine, this Court has no subject matter jurisdiction over the Plaintiff Geraldine Flournoy's claims. The Court has reviewed the motion, the parties' submissions, the record, and the applicable law. For the reasons that follow, the Defendants' motion to dismiss is granted.

**I.    BACKGROUND**

      **A.**    *Factual History*

      On March 26, 2007, the Plaintiff, appearing here *pro se*, executed a note (the "Note") and mortgage (the "Mortgage") in the amount of $155,396.00 in favor of lender Assurity Financial Services, LLC. Compl. ¶¶ 20-22; Defs.' Mot. Ex. A at 5-15. The Plaintiff used the loan to purchase property located at 2791 Northwest 2nd Street, Fort Lauderdale, Florida (the "Property"). Defs.' Mot. Ex. A at 5. The Plaintiff alleges that shortly after the loan was originated and funded it

was bundled into a group of notes and sold to investors as a derivative mortgage-backed security, which was issued by a trust securitized by the Government National Mortgage Association ("Ginnie Mae"). Compl. ¶ 23.[1] On December 23, 2010, MERS,[2] the lender's nominee and the mortgagee under the Mortgage, assigned the Mortgage to Nationwide. *Id.* ¶ 31.

After the Plaintiff failed to make payments due on her mortgage loan beginning in March 2010, Nationwide instituted a foreclosure action in February 2011 against the Plaintiff in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* Defs.' Mot. Ex. A. The Plaintiff was served with the foreclosure complaint, and later defaulted in April 2011. *See id.* Ex. B. at 10. Nationwide moved for final summary judgment in the foreclosure action, and the Plaintiff, on or about November 19, 2013, served a "Verified Objection to [Nationwide]'s Motion for Summary Judgment[,] Motion to Vacate Default and Motion to Dismiss Complaint with Prejudice" ("Verified Objection"), as well as an affidavit in opposition to the motion for summary judgment. *Id.* Ex. C. In the Verified Objection, the Plaintiff argued that Nationwide lacked standing and that because Nationwide never authenticated the Note, the alleged assignment of the Mortgage and affidavits proffered in support of Nationwide's motion for summary judgment were all invalid. *See id.* at 2-3. On November 20, 2013, the state court granted final judgment of foreclosure in favor of Nationwide. Defs.' Mot. Ex. D.

After several delays, including for the Plaintiff's chapter 13 bankruptcy proceeding filed in the Southern District Bankruptcy Court (which the Bankruptcy Court ultimately dismissed due

---

[1]  The Plaintiff asserts that Ginnie Mae is the current Trustee for the Trust. *See* Compl. ¶ 25.

[2]  In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

*Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, n.3 (S.D. Fla. 2011) (quoting *MERSCORP, Inc. v. Romaine*, 861 N.E.2d 81 (N.Y. 2006)) (internal quotation marks omitted), *aff'd*, 477 F. App'x 558 (11th Cir. 2012).

to the Plaintiff's failure to make pre-confirmation payments and failure to appear at the Section 341 meeting of creditors), the state court entered an order setting the sale date of the Property for January 22, 2015. *See id.* Exs. E-G. On that same day, the Plaintiff filed an objection to Nationwide's motion to reschedule the foreclosure date, and sought to vacate and void the final judgment and compel discovery "based on lack of standing and fraud." Defs.' Mot. Ex. B. at 5; *see also id.* Ex. H at 1 (formatting omitted). The state court denied this motion on January 22, 2015. Defs.' Mot. Ex. B at 4. The clerk issued a certificate of title to the property to Nationwide on February 3, 2015. *See* Defs.' Mot. Ex. G. The Plaintiff filed another objection to the sale asserting that Nationwide's actions displayed a "continued intent . . . to purport fraud on the court." *See id.* Ex. H at 3. On April 28, 2015, the state court overruled the objection. *See id.* Ex. B at 3.

The Plaintiff filed a second chapter 13 bankruptcy petition on May 4, 2015. *See id.* Ex. I. In her Chapter 13 Plan, she identified Nationwide as her secured creditor regarding the mortgage on the Property. *See id.* Ex. J. On July 21, 2015, upon the Plaintiff's filing of an *ex parte* motion to dismiss, the Bankruptcy Court dismissed her case with 180 days' prejudice. *Id.* Ex. K. On September 10, 2015, Nationwide's counsel in the foreclosure action served the Plaintiff with a notice of hearing for October 6, 2015, regarding its motion to direct the clerk to issue a writ of possession. *Id.* Ex. B at 2.

  **B.**  *Procedural History in this Action*

On September 21, 2015, the Plaintiff filed this action. In her Complaint, she alleges that the assignment of the Mortgage to Nationwide was effected three years after the Mortgage was placed in the rust, which allegedly violates the Pooling and Service Agreement that governs the trust and requires rescission of the Mortgage. Compl. ¶¶ 32-34. She alleges that Assurity sold its interest in the loan and was paid in full, but never recorded an assignment of mortgage, which "mak[es] the Mortgage a nullity." *Id.* ¶ 40. The Plaintiff also seeks to "determine the validity of

3

the Mortgage as to any unrecorded assignees over a period of years." *Id.* ¶ 37. She further contends that Ginnie Mae, as trustee, has no standing to obtain a beneficial interest in the Property. *Id.* ¶ 41. Moreover, she states that paragraph 20 of the Mortgage indicates that the Note and Mortgage may be sold, but must be transferred together. Because, she alleges, no assignment is recorded in Broward County to reflect a transfer of the loan to Ginnie Mae, the Mortgage and Note are void. *Id.* ¶¶ 42-44. She also alleges that none of the Defendants have standing to enforce the Mortgage. *Id.* ¶ 82.

The Plaintiff brings three claims. In the first claim, for breach of contract, she alleges that the Defendants breached the contract by (1) failing to notify her of the change in ownership of the Note and Mortgage; (2) separating the Note and the Mortgage; and (3) failing to record the transfer of the loan. *Id.* ¶¶ 119-29. In the second claim, the Plaintiff seeks to quiet title. *Id.* ¶¶ 135-50. And in the third claim, she seeks a declaratory judgment that the Mortgage is void for separation from the Note and for failure to record its assignment. *Id.* ¶ 153.

On October 15, 2015, the Plaintiff filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction seeking the prevention of the issuance of a writ of possession against the Property. *See* Pl.'s Emergency Mot. In it, she summarized her own Complaint as "focus[ing] on two primary allegations: (1) that the Note and Mortgage have been separated and transferred; (2) and that no assignment of the Mortgage, or lawful substitution of trustee was recorded." *See id.* at 2. The Plaintiff argued that the Defendants have no standing in this controversy and could not enter an objection to the TRO. *Id.* at 4. This Court denied the motion that same day, finding that the circuit judge in her foreclosure case necessarily considered the standing issues the Plaintiff raised in the Emergency Motion and concluding that the Plaintiff was not likely to succeed on the merits. *See* Order, ECF No. 7.

On October 21, 2015, the Defendants filed the instant Motion to Dismiss. They advance three principal arguments: (1) the *Rooker–Feldman* doctrine deprives this Court of subject matter

4

jurisdiction; (2) res judicata bars the Plaintiff from relitigating any claims that were or could have been litigated in the state court foreclosure action; and (3) each of the Plaintiff's claims fails to pass muster under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See generally* Defs.' Mot. In her opposition, the Plaintiff contends: (1) the *Rooker–Feldman* doctrine is inapplicable because of "newly discovered evidence"; (2) the Complaint clearly states plausible claims for relief; and (3) her claims are so substantially different than those litigated in the foreclosure action that res judicata does not apply. *See* Pl.'s Opp'n.

## II.   LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1)[3] may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction." *Id.* at 1251. Furthermore, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[4] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (citation and internal quotation marks omitted), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

---

[3]   The Defendants' motion is also brought, in part, pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that the *Rooker–Feldman* subject matter jurisdiction issue is dispositive, there is no need to recite the legal standard governing those motions here.

[4]   The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Here, the Defendants have advanced a factual attack on the Plaintiff's Complaint because they contend that this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine. *See, e.g.*, *Christophe v. Morris*, 198 F. App'x 818 (11th Cir. 2006) (per curiam) (affirming a district court's decision to dismiss the plaintiff's complaint where the district court had considered *Rooker–Feldman* as a factual attack on its subject matter jurisdiction). Accordingly, this Court may properly consider evidence outside the pleadings in determining whether the Complaint should be dismissed.

### III.  DISCUSSION

As outlined above, the Defendants raise several arguments in their Motion. Because the Court agrees with the Defendants that the *Rooker–Feldman* doctrine deprives the Court of subject matter jurisdiction, it will not address the remaining arguments.

"The *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam). The doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme Court's] appellate jurisdiction over state-court judgments precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Id.* at 291. The doctrine bars federal claims raised in the state court and claims "inextricably intertwined" with the state court's judgment. *See Feldman*, 460 U.S. at 482 n.16. A claim is "inextricably intertwined"

6

if it would "effectively nullify" the state court judgment or if it "succeeds only to the extent that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260 (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)) (internal quotation marks omitted); *see also Springer v. Perryman*, 401 F. App'x 457, 458 (11th Cir. 2010) (per curiam).

At the outset, the Court notes that there is no procedural bar to the application of the *Rooker–Feldman* doctrine here. The state foreclosure judgment was entered on November 20, 2013; the Plaintiff did not appeal; and the present federal action was not filed until September 21, 2015. *See Exxon Mobil*, 544 U.S. at 284 (2005); *Nicholson v. Shafe*, 558 F.3d 1266, 1276 (11th Cir. 2009).

Turning to the substance of the issue, the Defendants cite a litany of Florida cases—each of which applies *Rooker–Feldman* "to dismiss actions where plaintiffs were, in reality, challenging state-foreclosure judgments," *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1320 (S.D. Fla. 2011)—and argue that this Plaintiff's claims are inexplicably intertwined with the state court judgment of foreclosure and thus *Rooker–Feldman* should apply. *See* Defs.' Mot. at 5-6; *see also Parker v. Potter*, 368 F. App'x 945, 947-48 (11th Cir. 2010) (rejecting under *Rooker–Feldman* a federal claim under the Truth in Lending Act that sought rescission of a state foreclosure judgment); *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892-93 (11th Cir. 2008) (per curiam) (holding that appellants' TILA claims were inextricably intertwined with a state court foreclosure judgment and were thus barred under *Rooker–Feldman*); *Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132-33 (11th Cir. 2005) (per curiam) (affirming dismissal of TILA, Fair Debt Collection Practices Act, and Equal Credit Opportunity Act claims under *Rooker–Feldman* because they were inextricably intertwined with the state-court foreclosure proceeding); *Distant v. Bayview Loan Servicing, LLC*, No. 09-61460, 2010 WL 1249129, at *2-4 (S.D. Fla. Mar. 25, 2010) (dismissing plaintiff's claims for common law civil conspiracy under *Rooker–Feldman*). The Plaintiff's sole

7

argument in opposition to the application of *Rooker–Feldman* is that the doctrine does not apply "due to newly discovered evidence which debunks the erronious [sic] decision rendered at the State court level." Pl.'s Opp'n at 2. The Plaintiff, however, mentions nowhere in her pleadings what this so-called "newly discovered evidence" is, nor does she cite any authority to support the proposition that "newly discovered evidence" is a standard that somehow allows her claims to circumvent the strictures of *Rooker–Feldman*. Despite the Plaintiff's near-total lack of opposition to the Defendants' argument on this issue, however, the Court must still determine whether the Plaintiff's claims are "inextricably intertwined" with the state court judgment such that *Rooker–Feldman* applies.

After a thorough review of the pleadings, the Court determines that the Plaintiff's sole contention in actuality is that the state court improperly granted the foreclosure judgment, which brings her claims squarely within the ambit of the *Rooker–Feldman* doctrine. *See Wint v. BAC Home Loans Servicing, LP*, No. 15-80376, 2015 WL 3772508, at *2 (S.D. Fla. June 17, 2015). The Plaintiff lost the foreclosure action in state court, and she now brings this action to contest the validity of that judgment and to seek damages for injuries she suffered as a result of the foreclosure. In her motion for a TRO and preliminary injunction, the Plaintiff herself asserted that "[t]his matter arises out of Defendants' erroneous judgment issued by the state circuit court. Plaintiff has alleged wrongful foreclosure in that Defendants did not have standing to foreclose, yet did anyhow." Pl.'s Emergency Mot. at 2. She also states that her Complaint "focuses on two primary allegations: (1) that the Note and Mortgage have been separated and transferred; (2) and that no assignment of the Mortgage, or lawful substitution of trustee was recorded." *Id.* It is clear that, "[r]egardless of the legal theories [the Plaintiff's] individual claims are premised upon, each claim has a connection with [her] mortgage and subsequent foreclosure." *Wint*, 2015 WL 3772508, at *2.

All of the injuries alleged in the Complaint stem from the foreclosure of the Property, and the Plaintiff explicitly seeks a judgment from this Court that would have the effect of voiding the

8

state court's judgment of foreclosure. Specifically, the relief the Plaintiff seeks includes an order compelling the Defendants to release legal title and possession of the Property to her; a judgment enjoining each of the Defendants from claiming any interest in the Property; monetary damages; and a declaration that any foreclosure based on her loan be "deemed and declared illegal and void." *See* Compl. at 26. Should the Plaintiff prevail in seeking this relief, the original loan transaction would need to be unwound, the Defendants would lose their (now executed) security interest in the Plaintiff's property, and then they presumably would need to return the title to the Property back to her. *See Canen v. U.S. Bank Nat'l Ass'n*, 913 F. Supp. 2d 657, 662 (N.D. Ind. 2012), *aff'd as modified*, 556 F. App'x 490 (7th Cir. 2014) (mem.). "But the precise issue decided in the state foreclosure action was that one or more of the Defendants *had* a valid security interest in the [Property] and *could* take possession of it as a result of the [Plaintiff's] nonpayment." *Id.* The Plaintiff also alleges throughout the Complaint that the state court judgment was granted to the Defendants as a result of fraudulent activity undertaken by the Defendants, *see, e.g.*, Compl. ¶¶ 48, 76, 155; however, were the Court to accept the Plaintiff's argument, it "would effectively declare the state court judgment fraudulently procured and thus void." *Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002).

At bottom, the Plaintiff explicitly requests that this court "deem[] and declare[]" her original loan "illegal and void," Compl. at 26—in other words, vacate the state court foreclosure judgment. This the Court cannot do. *See Figueroa*, 766 F. Supp. 2d at 1324 ("[B]y entering judgments of foreclosure, the Florida state courts determined the foreclosures were proper. These state courts exercised their authority over state law and found the foreclosing parties satisfied Florida's procedural safeguards."); *cf. Deitch v. Fed. Nat'l Mortg. Ass'n* (*In re Deitch*), 533 B.R. 138, 142 (E.D. Pa. 2015) (concluding that *Rooker–Feldman* deprived the court of subject matter jurisdiction where the relief the debtor sought would necessitate a "finding that no valid mortgage existed,

9

which would negate the foreclosure judgment" (quoting *Madera v. Ameriquest Mortg. Co.* (*In re Madera*), 586 F.3d 228, 232 (3d Cir. 2009) (internal quotation marks omitted)), *appeal docketed*, No. 15-2554 (3d Cir. June 21, 2015). The Plaintiff's claims for specific performance, as well as declaratory and injunctive relief could succeed "only to the extent that the state court wrongly decided the issues," which the *Rooker–Feldman* doctrine specifically prohibits. *Casale*, 558 F.3d at 1260. To the extent the Plaintiff seeks monetary damages and does not seek to overturn the state court foreclosure judgment, it has no bearing on the Court's decision, as damages would be available only where there was a wrongful foreclosure. *See Wint*, 2015 WL 3772508, at *3 (citing *Rene v. Citibank*, 32 F. Supp. 2d 539, 543 (E.D.N.Y. 1999)).[5]

Finally, the Court determines that the Plaintiff did have a reasonable opportunity to raise her claims in the state court proceeding. *See Casale*, 558 F.3d at 1260; *Figueroa*, 766 F. Supp. 2d at 1325-26. The foreclosure action was filed in Florida circuit court, a court of general jurisdiction. *See* Defs.' Mot. Ex. B; Fla. Const. art. V, § 5; Fla. Stat. § 26.012. Breach of contract claims, quiet title claims, and claims seeking declaratory judgment may all be raised in Florida circuit courts. *See, e.g.*, *DePrince v. Starboard Cruise Servs., Inc.*, 163 So. 3d 586 (Fla. 3d DCA 2015) (breach of contract); *Hinton v. Gold*, 813 So. 2d 1057 (Fla. 4th DCA 2002) (quiet title); *State Farm Fire & Cas. Co. v. Higgins*, 788 So. 2d 992 (Fla. 4th DCA 2001) (declaratory judgment). The Defendants have included as an exhibit the Plaintiff's Verified Objection to the motion for summary judgment in that action, which itself included a motion to vacate the default entered against the Plaintiff and to dismiss the foreclosure complaint with prejudice. *See* Defs.' Mot. Ex. C. In that Verified Objection, the Plaintiff advanced the same arguments she advances here: the Defendants do not

---

[5] Even looking at each of the claims specifically—rather than all of the claims broadly—the Plaintiff still does not prevail. The quiet title claim, for instance, can only be seen as inextricably intertwined with the prior foreclosure proceedings, for "[a]lthough [the Plaintiff]'s quiet title claim is not styled as an appeal from the foreclosure action, it is clear from the Complaint that [her] claim is based entirely on the alleged impropriety of the foreclosure." *Hunter v. U.S. Bank Nat'l Ass'n*, 698 F. Supp. 2d 94, 100 (D.D.C. 2010).

have standing and the Mortgage is invalid. *See id.* The pleadings indicate that, although a default was initially entered against the Plaintiff, the Defendants prevailed in the state court action on a motion for summary judgment. *See id.* Ex. D. The Plaintiff filed an objection to the foreclosure sale in which she challenged the judgment in favor of the Defendants, alleging fraud on the court. *See id.* Ex. H. And she also, for whatever reason, elected not to appeal the state court's decision. *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 167 (E.D.N.Y. 2010) (finding that *Rooker–Feldman* applied because the plaintiff had ample opportunity to raise the fraud claim before the state court in her answer or her motions for reconsideration, and the proper venue to challenge the state court's decision "was by appeal in state court—not in federal court"). In sum, "there [is] nothing in the record to suggest that the [Plaintiff] [was] deprived of the opportunity to present the instant claims before the state Court." *Cavero v. One W. Bank FSB*, 617 F. App'x 928, 930-31 (11th Cir. 2015) (per curiam). As a result, the Court finds that the Plaintiff had a full and fair opportunity to litigate her claims in state court. *Cf. Figueroa*, 766 F. Supp. 2d at 1325-26.

Accordingly, the Court concludes that the Plaintiff's claims are inextricably intertwined with her final state court foreclosure judgment and, as a result, are barred by the *Rooker–Feldman* doctrine. *See Nivia v. Nationstar Mortg., LLC*, No. 13-24080, at *3 (S.D. Fla. Aug. 21, 2014), *aff'd*, 620 F. App'x 822 (11th Cir. 2015) (per curiam), *petition for cert. filed sub nom. Nivia v. Aurora Loan Servs., LLC*, No. 15-0724 (U.S. Dec. 3, 2015). This Court, therefore, does not have subject matter jurisdiction over the Plaintiff's claims.

* * *

The Plaintiff requests leave to amend her Complaint. *See* Pl.'s Opp'n at 7-8. "A district court need not . . . allow an amendment . . . where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). The Court finds that amendment would futile in light of the *Rooker–Feldman* jurisdictional defect, and the Plaintiff has failed to articulate how any proposed

11

amendment might resolve that defect. *See Cavero*, 617 F. App'x at 931. Accordingly, the Plaintiff's request for leave to amend shall be denied.

### IV.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendants' motion to dismiss [ECF No. 11] is **GRANTED**. The Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.

The Plaintiff's request for leave to amend her Complaint is **DENIED**.

The Clerk is directed to mark this case **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of January, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE